1

2

3

4

5

6

7

8        IN THE UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KENT BOURLAND,

11        Plaintiff,                              No. CIV S-09-3195-KJM-CMK

12        vs.

13   CITY OF REDDING, et al.,

14        Defendants.                             <u>ORDER</u>

15   _____/

16        On December 17, 2012, defendants filed a motion in limine to exclude the

17   testimony of Dr. Peter C. Meade, an expert retained by plaintiff Kent Bourland.  (Mot. in Limine

18   Regarding Test. by Expert Peter C. Meade, M.D., ECF 29.)  Plaintiff filed an opposition to the

19   motion on December 24, 2012 (Pl.'s Opp'n & Resp. to Defs.' Mot. in Limine, ECF 31) and

20   defendants filed a reply on December 31, 2012 (Reply, ECF 38.)  For the reasons stated below,

21   defendants' motion is DENIED.

22        The following motion has been decided based upon the record presently before

23   the court. The ruling is made without prejudice and is subject to proper renewal, in whole or in

24   part, during trial. If a party wishes to contest a pretrial ruling, it must do so through a proper

25   motion or objection, or otherwise forfeit appeal on such grounds. *See* FED. R. EVID. 103(a);

26   *Tennison v. Circus Circus Enters., Inc.,* 244 F.3d 684, 689 (9th Cir. 2001) ( "Where a district

1

1  court makes a tentative in limine ruling excluding evidence, the exclusion of that evidence may

2  only be challenged on appeal if the aggrieved party attempts to offer such evidence at trial.")

3  (alteration, citation and quotation omitted).

4  I.  BACKGROUND

5          Meade is an Assistant Professor of Surgery at Tulane University Medical Center

6  who has "specialized in treating victims of trauma."  (Rule 26 Report ¶ 1, ECF 29.)  In his Rule

7  26 Report, Meade summarizes his intended testimony as follows:

> When permitted or ordered to bite, the Redding police dog was far
> more likely to cause serious injuries than a comparable dog not
> trained and selected for work as a police dog.  Also, when
> permitted or ordered to bite [] Bourland, the police dog created a
> substantial risk of causing serious bodily injury to [] Bourland.  As
> a result of the police dog attack, [] Bourland also faced a
> reasonable possibility of serious infection.  Finally, when the dog
> was biting [] Bourland, because of the pain and terror of the dog
> attack one should have expected that [] Bourland's natural and
> predictable reaction would be to try and stop the dog from biting,
> whether by hitting, kicking, grabbing, or by some other method to
> stop the biting.

15  (*Id.* ¶ 3.)

16          In addition to plaintiff's medical records, Meade bases his opinion testimony on

17  (1) "[m]edical records. . . of over 800 persons attacked and bitten by police dogs used by various

18  Southern California law enforcement agencies"; (2) "[m]edical records from Martin Luther King

19  medical center of over 1000 persons bitten by ordinary dogs,"[1] (3) "over 600 photographs of

20  injuries inflicted by Los Angeles Police Department (LAPD) dogs between 1991 and 1992 and

21  Montebello Police Department dogs between 1988 and 1992; (4) "[t]he medical literature on dog

22  bite injuries in general and police dog bite injuries in particular"; (5) LAPD records of persons

---

24          [1]  Meade's Rule 26 Report does not specify the time period of the medical records for
either the police dog victims or the ordinary dog victims, but he stated in his deposition that the
25  police dog victims' medical reports covered incidents between 1988 and 1990 and the medical
records of ordinary dog bite victims were from between 1989 and 1996.  (Meade Dep. at 25:20-
26  23; 26:16, ECF 29.)

1    bitten by police dogs between 1988 and 1990 and all corresponding medical records Meade was

2    able to find; (6) "[s]tatistics showing the frequency that baton strikes by LAPD officers and dog

3    attacks by LAPD dogs cause persons to be admitted into a hospital for in-patient treatment,"

4    derived from a study published in 1991 that reviewed incidents in 1989; (7) "[v]ideotapes of

5    police dogs attacking and biting"; (8) training materials on the use of police batons, including a

6    LAPD bulletin from 1986; and (9) "[d]epositions and trial transcripts of testimony by trainers of

7    police dogs regarding the training of the dogs to attack and bite" from various police

8    departments.  (*Id.* ¶ 2.)

9           Meade also provided a copy of his own article on dog bites, *Police and domestic*

10   *dog bite injuries: What are the differences? What are the implications about police dog use?*, 37

11   INJURY EXTRA 395 (2006). (*Id.*; Ex. 1, ECF 31.)  The article compares domestic and police dog

12   bites and concludes that the latter are more serious because of the way police dogs are trained to

13   bite and the breeds of dogs used by police departments.  (Ex. 1, ECF 31.)  The domestic bite data

14   Meade used for the study is from 1989 through 1996 and the police dog bite data is from 1988

15   through 1990.  (*Id.*)  There is no evidence regarding whether Meade's article or the other articles

16   on which he relies were subject to peer review.

17   II.  ANALYSIS

18           Under Federal Rule of Evidence 702

19            A witness who is qualified as an expert by knowledge, skill,
         experience, training, or education may testify in the form of an
20       opinion or otherwise if:
         (a) the expert's scientific, technical, or other specialized knowledge
21       will help the trier of fact to understand the evidence or to
         determine a fact in issue;
22       (b) the testimony is based on sufficient facts or data;
         (c) the testimony is the product of reliable principles and methods; and
23       (d) the expert has reliably applied the principles and methods to
         the facts of the case.

24

25   The court is obligated to perform a "gatekeeping" function to ensure that expert testimony is

26   both relevant and reliable.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999);

                                                    3

1    *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993).  The court must determine if the

2    offered testimony is "(1) scientific knowledge that (2) will assist the trier of fact to understand or

3    determine a fact in issue." *Daubert*, 509 U.S. at 592.  "Expert opinion testimony is relevant if

4    the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if

5    the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant

6    discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citations and quotations

7    omitted).  The court has flexibility in determining the relevant factors for assessing reliability,

8    particularly in the context of medical expert testimony.  *See id.*

9           As an initial matter, defendants argue that because Meade has not provided the

10   records describing dog bites in Southern California on which he based his conclusions, Meade's

11   testimony cannot comply with Federal Rule of Civil Procedure 26(a)(2)(B), which requires that

12   an expert providing testimony must provide a report containing "a complete statement of all

13   opinions the witness will express and the basis and reasons for them" and "the facts or data

14   considered by the witness in forming [the opinions]."  (ECF 29 at 5-6.)  This requirement is

15   rooted in1993 amendments made to Rule 26, intended to "accelerate the exchange of basic

16   information about the case and to eliminate the paper work involved in requesting such

17   information" as well as to "disclose information regarding expert testimony sufficiently in

18   advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross

19   examination and perhaps arrange for expert testimony from other witnesses."  Fᴇᴅ. R. Cɪᴠ. P. 26

20   -- advisory committee notes.  In 2010, the Rule was amended to include the language that

21   requires experts to produce "facts or data," rather than "data or other information" as previously

22   provided.  *Id.*  "[F]acts or data" is meant to "be interpreted broadly to require disclosure of any

23   material considered by the expert, from whatever source, that contains factual ingredients." *Id.*

24   Neither party has provided case law interpreting what is meant by "facts or data" and there

25   appears to be no controlling authority on the question.

26   /////

1    In light of Rule 26(a)(2)(B), the court cannot conclude that Meade's report is

2    wholly deficient.  As Meade explained in his deposition, he agreed to return the medical histories

3    to the hospital as a condition of conducting his research and he no longer has the photographs he

4    reviewed.  (Meade Dep. at 31:13-32:16.)  The court finds that Meade's Rule 26 report is largely

5    adequate, as it extensively details his opinions and the sources he used to develop them.  *See*

6    *Nixon-Egli Equip. Co. v. John A. Alexander Co.*, 949 F. Supp. 1435, 1445 (C.D. Cal. 1996).  The

7    lack of records from Meade's study could, however, potentially prevent defendants from

8    meaningfully challenging his conclusions. *See McClellan v. I-Flow Corp.*, 710 F. Supp. 2d 1092,

9    1129 (D. Or. 2010) (doctor could not testify about medical theory when she could not produce

10   patient records on which theory was based).  In the court's opinion, precluding Meade from

11   testifying for this reason would be unduly harsh because his inability to produce the records is

12   "substantially justified."  FED. R. CIV. P. 37(c).  Plaintiff will be allowed to offer him as a

13   witness.

14          Defendants also assert that Meade's testimony that police dog bites are typically

15   more severe than other dog bites will not help the trier of fact determine if the defendants used

16   excessive force when arresting plaintiff, particularly because the data that Meade relies on is

17   approximately twenty years old and much of it was provided to him by attorneys he was helping

18   with another case.  (ECF 38 at 2; Meade Dep. at 20:5-11 & 25:8-14, ECF 29.)  Moreover, Meade

19   has not continued to review more recent data on dog bites, nor conducted significant review of

20   the literature, since publishing his 2006 article.  (ECF 38 at 2; Meade Dep. at 23:16-22, ECF 29.)

21   For these reasons, defendants argue, Meade's proposed testimony is unreliable.  Additionally,

22   defendants assert that police dog training is outside Meade's medical expertise.  (*Id.* at 10.)

23   Defendants object in particular to Meade's description of a videotape he once watched where a

24   police dog "appeared to throw the dog's head to and fro, causing lacerations," because Meade

25   does not know if the dog that bit plaintiff behaved the same way.  (*Id.* at 11.)  Plaintiff responds

26   that Meade's testimony will help the jury understand the extent of force used and is necessary

1   because most people are not familiar with the differences between police dog bites and other dog

2   bites.  (ECF 31 at 2-3.)  He further asserts that the police dogs Meade studied are comparable to

3   the dog that bit plaintiff. Specifically, the dog that bit Bourland was a seventy-five pound

4   German Shepherd and was trained to use "full-mouth bites" and bite a person again if it lost its

5   grip.  (*Id.* at 4-5; Berg Dep. at 115:15-16, Ex. 2, Berg Dep. at  9:13-17, 10:8-10, Ex. 4, ECF 31.)

6   Meade states in his Rule 26 Report that his research confirms that law enforcement agencies use

7   similar types of dogs, generally German Shepherds, and are typically trained to use a full-mouth

8   bite.  (Rule 26 Report ¶ 4, ECF 29.)

9                  In most respects, the subject matter of Meade's proposed testimony is relevant to

10   help the jury understand the type of force police used against plaintiff and the basis for Meade's

11   opinion is sufficiently reliable to be used in this case.  Plaintiff is correct that the reasonable

12   force issue requires determining the extent of force that the police used.  *See Smith v. City of*

13   *Hemet*, 394 F.3d 689, 701-02 (9th Cir. 2005) (in excessive force case, discussing the amount of

14   force police used by ordering police dog to bite individual, citing *Graham v. Connor*, 490 U.S.

15   386 (1989)); *Quintalla v. City of Downey*, 84 F.3d 353, 356 (9th Cir. 1996) (expert testimony on

16   characteristics of police dog bites "may well have been admissible to demonstrate [police] dog's

17   capacity for causing serious injury").  Plaintiff has shown that Meade has an adequate, if

18   academic basis for his testimony, through his own research and published article and his

19   familiarity with scientific literature on dog bites.  *See, e.g., Holbrook v. Lykes Bros. S.S. Co.,*

20   *Inc.*, 80 F.3d 777, 785 (3d Cir. 1995) (expert had relied in part on review of literature); *Monroe*

21   *v. Zimmer U.S. Inc.*, 766 F. Supp. 2d 1012, 1027-28 (E.D. Cal. 2011) (same).  At the same time,

22   defendants may explore the weaknesses they have identified in Meade's qualifications and the

23   application of his research to this case during proper cross-examination.  In sum, Meade's

24   knowledge with respect to police dog bites may assist the jury, if it finds Meade credible and

25   gives his testimony weight, in understanding the force used on plaintiff.

26   ////

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Dog training techniques, however, are not the focus of Meade's intended testimony as described in his expert report summary. (*See* Rule 26 Report ¶ 3, ECF 29.)  Unlike other experts who have been permitted to testify about dog training in excessive force cases, Meade is a medical doctor without a law enforcement background or any knowledge of police dog training.  *See, e.g., Kopf v. Skyrm*, 993 F.2d 374, 378-79 (4th Cir. 1993) (district court abused discretion by excluding testimony of expert police dog trainers, because those experts' testimony could have helped jury understand the "obscure skills" of police dog training and use); *Campbell v. City of Springboro, Ohio*, 788 F. Supp. 2d 637, 662-63 (S.D. Ohio 2011) (allowing expert witness who had founded dog training company and had decades of experience training and evaluating police dogs to testify on defendant police department's practices regarding canine unit).  Meade's medical expertise does not allow him to testify reliably about how police dogs are used and trained, including whether they shake their heads while biting, and so any testimony on these topics is excluded.

Defendants' motion is DENIED with the clarification that Meade's testimony will be strictly limited to the subject matters identified in his expert report summary.

DATED:  January 10, 2013.

_____
UNITED STATES DISTRICT JUDGE