1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KENT BOURLAND,

11        Plaintiff,                         No. CIV S-09-3195-KJM-CMK

12      vs.

13   CITY OF REDDING, et al.

14        Defendants.                        ORDER

15   _____/

16        Plaintiff Kent Bourland filed five motions in limine on December 24, 2012,

17   seeking to exclude evidence that may be offered by defendants.  (ECF 32, 33, 34, 35, and 36.)

18   On December 31, 2012, defendants filed oppositions to these motions (ECF 39, 40, 41, 42 and

19   43) and plaintiff filed his replies on January 7, 2013 (ECF 45, 46, 47, 48).

20        The following motions have been decided based upon the record presently before

21   the court. Each ruling is made without prejudice and is subject to proper renewal, in whole or in

22   part, during trial.  If a party wishes to contest a pretrial ruling, it must do so through a proper

23   motion or objection, or otherwise forfeit appeal on such grounds.  *See* FED. R. EVID. 103(a);

24   *Tennison v. Circus Circus Enters., Inc.,* 244 F.3d 684, 689 (9th Cir.2001) ("Where a district

25   court makes a tentative in limine ruling excluding evidence, the exclusion of that evidence may

26   only be challenged on appeal if the aggrieved party attempts to offer such evidence at trial.")

1

1 (alteration, citation and quotation omitted). In addition, unless otherwise stated below,

2 challenges to expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S.

3 579 (1993) are denied without prejudice. Should a party wish to renew a *Daubert* challenge at

4 trial, it should alert the court, at which point the court may grant limited voir dire the day before

5 such expert may be called to testify.

6 I.        Motion to Exclude Evidence of Plaintiff's Dupuytren's Contracture Condition

7                Plaintiff wishes to exclude evidence concerning a medical condition he has called

8 Dupuytren's Contracture in his right wrist.  (ECF 32.)  Dupuytren's Contracture is "a condition

9 where the fascia, which is the layer . . . just under the skin in the palms, thickens and shortens

10 . . ." causing the hand to form a claw-like shape.  (Dep. of Stephen P. Ferraro, Jr., M.D. at 5:8-

11 15, ECF 32.)  The condition is "commonly believed to be an inherited condition common to

12 males of northern European ancestry."  (*Id.* at 6:15-17.)  Plaintiff testified that Dupuytren's

13 Contracture did not impact his work but that he decided to undergo surgery in case it worsened.

14 (Kent Bourland Dep. at 9:19-24, 11:4-8, ECF 32.)  Dr. Stephen P. Ferraro performed the surgery

15 in January 2007.  (Ferraro Dep. at 12: 4-5.)  Before surgery, plaintiff's ring finger was contracted

16 approximately thirty degrees; other digits were affected less severely.  (*Id.* at 5:21-25.)

17                The doctor who performed the surgery stated there is some evidence that trauma

18 can worsen the condition.  (*Id.* at 8:6-11.)  However, Dupuytren's Contracture, according to Dr.

19 Harvinder Birk, who treated plaintiff after defendants arrested him on November 20, 2008, does

20 not increase the risk of suffering compression of the ulnar nerve, which is the wrist injury that

21 plaintiff asserts defendants caused when he was handcuffed.  (Dep. of Harvinder Birk, M.D. at

22 4:14-24, ECF 32.)

23                As there is no connection between Dupuytren's Contracture and compression of

24 the ulnar nerve, plaintiff argues that evidence of his condition should be excluded as irrelevant

25 under Federal Rule of Evidence 402.  (ECF 32 at 2.)  In response, defendants contend that

26 evidence of Dupuytren's Contracture is relevant because any pre-existing condition in plaintiff's

1   hand would impact the extent to which ulnar nerve compression affects the use of plaintiff's

2   wrist.  Additionally, defendants argue that plaintiff's experience getting surgery for Dupuytren's

3   Contracture is relevant to whether plaintiff would suffer harm from undergoing a procedure for

4   ulnar nerve compression, which is at issue in the case.  (ECF 39 at 3.)

5          Relevant evidence is that "having any tendency to make the existence of any fact

6   that is of consequence to the determination of the action more probable or less probable than it

7   would be without the evidence."  FED. R. EVID. 401, 402; *Boyd v. City & Cnty. of San Francisco*,

8   576 F.3d 938, 943 (9th Cir. 2009).  Plaintiff's argument that evidence of his Dupuytren's

9   Contracture is irrelevant is convincing and the court will exclude it.  Based on the evidence that

10  plaintiff provides, there is no indication that the condition ever led to an impairment of the use of

11  his hand that would be compounded by his ulnar nerve compression, particularly because

12  plaintiff received surgery correcting the contracture.  Defendants have provided no evidence

13  showing otherwise.  Moreover, defendants have not explained the connection they allege

14  between plaintiff's surgery with Dr. Ferraro and any harm associated with surgery that plaintiff

15  would potentially receive for ulnar nerve compression.

16          The court GRANTS plaintiff's motion to exclude evidence of plaintiff's

17  Dupuytren's Contracture.

18  II.      Motion to Exclude Evidence of Prior Incidents Between Plaintiff and His Wife

19          Plaintiff requests that evidence of several events that occurred before his arrest be

20  excluded.  (ECF 34.)  Specifically, plaintiff would like to exclude evidence that (1) on the night

21  plaintiff was arrested and several other times in the past, Katie Bourland, plaintiff's wife, and

22  their two daughters left their house because Katie wished to avoid argument and possible

23  physical confrontation with plaintiff (Katie Bourland Dep. at 33:17-34:19, ECF 34); (2) on

24  several occasions, plaintiff threw objects when he and his wife fought, and he once broke a

25  window (*id.* at 43:14-45:1); (3) the night plaintiff was arrested, Katie told officers either that she

26  wanted the "cycle to end" or used the term "cycle of violence" (*id.* at 62:4-24); (4) plaintiff made

1   suicidal statements to Katie several times, including in April 2008, when Katie called police and

2   told them she was concerned plaintiff might kill himself (*id.* at 82:1-84:16); (5) plaintiff shoved

3   Katie when she was walking down steps sometime in or around December 2007 (*id.* at 84:17-

4   86:5); (6) Katie often accused plaintiff of "financial infidelity" (*id.* at 20:2-6).

5                      Plaintiff argues that none of this evidence is relevant because he has already

6   conceded there was probable cause for his arrest. (ECF 34 at 3.) Additionally, he argues that it

7   is inadmissible character evidence under Federal Rule of Evidence 404. (*Id.* at 4.) Defendants

8   assert that the evidence is not offered as character evidence, but is relevant to explain why

9   plaintiff's family called police and to explain why defendant police officers arrested plaintiff and

10  chose to use the police dog. (ECF 41 at 3, 5-6.) The relevance of those incidents accordingly

11  depends on whether defendant officers were aware of them before they arrested plaintiff. *See*

12  *Chew v. Gates*, 27 F.3d 1432, 1442 n. 9 (9th Cir. 1994). In their opposition brief, defendants

13  argue that the arresting officers knew about Katie's "cycle of violence" comment, referencing

14  the excerpts of her deposition provided by plaintiff. (ECF 41 at 2.) But it is not clear from these

15  portions of her testimony whether the officers knew about the comment before the arrest.

16  "When the relevance of evidence depends on whether a fact exists, proof must be introduced

17  sufficient to support a finding that the fact does exist. The court may admit the proposed

18  evidence on the condition that the proof be introduced later." FED. R. EVID. 104(b). Defendants

19  have not demonstrated that the arresting officers were aware of the disputes between plaintiff

20  and his wife and thus have not shown that the evidence is relevant.

21                     Plaintiff's motion to exclude this evidence is GRANTED, without prejudice to

22  defendants' seeking reconsideration by providing evidence sufficient to support a finding that the

23  officers knew about the above-listed incidents before the arrest.

24  III.     Motion to Exclude Evidence of Plaintiff's Alcohol Consumption

25                     Plaintiff asks the court to exclude evidence that he or his wife characterized

26  plaintiff as an alcoholic and evidence about his alcohol consumption in general, except evidence

1   about his drinking the night of his arrest.  (ECF 33, 46.)  He argues that this evidence is

2   irrelevant.  (*Id.*)  Defendants agree not to refer to plaintiff as an alcoholic, but argue that

3   information about habitual alcohol consumption is relevant to plaintiff's history of domestic

4   violence.  (ECF 40 at 2-3.)  As explained in the previous section, previous disputes between

5   plaintiff and his wife that the arresting officers did not know about are not relevant to plaintiff's

6   excessive force claim.  Defendants also appear to argue that plaintiff's alcohol consumption is

7   relevant to the credibility of his testimony about his arrest.  (*Id.* at 4.)  However, plaintiff does

8   not seek to exclude evidence of his drinking the night he was arrested, and defendants do not

9   explain how information about plaintiff's general drinking habits is relevant to his credibility.

10          Accordingly, plaintiff's motion to exclude evidence about his alcohol

11  consumption, with the exception of the night he was arrested, is GRANTED.

12  IV.     Motion to Exclude Evidence that Plaintiff Took Effexor

13          Plaintiff requests that the court exclude evidence that he took the prescription

14  medication Effexor.  (ECF 35.)  As defendants state that they do not plan to offer this evidence

15  (ECF 42), plaintiff's motion is GRANTED.

16  V.      Motion to Exclude Testimony of Dr. Richard N. Robertson

17          Plaintiff asks the court to exclude the testimony of Dr. Richard N. Robertson, an

18  expert witness retained by defendants.  Robertson's curriculum vita, attached to his Rule 26

19  Report, indicates that he is an expert in biomechanics of injury.  (Rule 26 Report at 43, ECF 23.)

20  He has a bachelors in physical education from the University of Ottawa, a masters in human

21  kinetics from the University of Windsor and a Ph.D. in Biomechanics from the University of

22  Illinois at Champaign-Urbana.  (*Id.*)  He has been a professor at numerous universities and is a

23  prolific writer of articles published in scientific journals.  (*Id.* at 43, 48-55)  Robertson would

24  testify (1) that the handcuffing during plaintiff's arrest was unlikely to cause injury to his ulnar

25  nerve; (2) handcuffing would most likely cause injury to the radial nerve, rather than the ulnar

26  nerve; (3) injury to the ulnar nerve most likely would have caused visible trauma to the wrist and

1   plaintiff's medical history did not reference such symptoms; (4) research studies show that

2   individuals whose ulnar or medial nerves have been injured by handcuffs generally report pain as

3   soon as the handcuffs are applied.  Plaintiff's police report and preliminary medical records do

4   not indicate that he felt pain as soon as he was handcuffed.  (*Id.* at 9-10.)

5                               Under Federal Rule of Evidence 702

6           A witness who is qualified as an expert by knowledge, skill,
        experience, training, or education may testify in the form of an
7       opinion or otherwise if:
        (a) the expert's scientific, technical, or other specialized knowledge
8       will help the trier of fact to understand the evidence or to
        determine a fact in issue;
9       (b) the testimony is based on sufficient facts or data;
        (c) the testimony is the product of reliable principles and methods; and
10      (d) the expert has reliably applied the principles and methods to
        the facts of the case.

11

12  The court is obligated to perform a "gatekeeping" function to ensure that expert testimony is

13  both relevant and reliable.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999);

14  *Daubert*, 509 U.S. at 589.  The court must determine if the offered testimony is "(1) scientific

15  knowledge that (2) will assist the trier of fact to understand or determine a fact in issue."

16  *Daubert*, 509 U.S. at 592.  "Expert opinion testimony is relevant if the knowledge underlying it

17  has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it

18  has a reliable basis in the knowledge and experience of the relevant discipline."  *Primiano v.*

19  *Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citations and quotations omitted).

20              Plaintiff does not dispute Robertson's expertise in biomechanics, but he offers

21  several reasons why the court should not permit Robertson to testify about the likelihood that

22  handcuffing caused plaintiff's ulnar nerve compression; plaintiff notes in particular that

23  Robertson is not a medical doctor and says therefore he is not qualified to offer a medical

24  opinion.  (ECF 36 at 6-7.)  Robertson's background as a biomechanics expert does not qualify

25  him to testify regarding medical causation.  In *Smelser v. Norfolk Southern Railway Co.*, the

26  Sixth Circuit Court of Appeals held that a biomechanics expert witness's opinion that the failure

1  of the plaintiff's seatbelt during a collision caused plaintiff's neck injury should have been

2  excluded during trial.  105 F.3d 299, 305 (6th Cir. 1997).  This testimony was outside the expert

3  witness's background in biomechanics.  *Id.*  Other courts have reached similar conclusions.  The

4  court in *Bowers v. Norfolk Southern Corp.* explained that biomechanics experts "typically are

5  found to be qualified to render an opinion as to the forces generated in a particular accident and

6  the general types of injuries those forces may generate," rather than the cause of a specific

7  injury.  537 F. Supp. 2d 1343, 1377 (M.D. Ga. 2007).  The court in *Bowers* excluded one such

8  witness's opinion regarding whether locomotive vibration had caused a plaintiff's back injury.

9  *Id.  See also Berner v. Carnival Corp.*, 632 F. Supp. 2d 1208, 1213 (S.D. Fla. 2009)

10 (biomechanics engineer could testify as to whether force applied to head was "*sufficient* to have

11 caused an injury of the type [the plaintiff] alleges to have suffered," but not whether the force

12 caused the injury).  Here, Robertson proposes to testify as to whether handcuffs could cause the

13 type of injury that plaintiff received, as well as present his opinion that the handcuffs here most

14 likely did not cause plaintiff's ulnar nerve compression.  The court will allow Robertson to

15 testify only as to the first opinion; the second part of Robertson's intended testimony is outside

16 the scope of his expertise as a biomechanics expert.

17          Plaintiff's motion is GRANTED in part and DENIED in part as set forth herein.

18 DATED:  January 11, 2013.

19

20 _____

21                              UNITED STATES DISTRICT JUDGE

22

23

24

25

26