IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT COURT OF CALIFORNIA

KENT BOURLAND,

        Plaintiff,           No. 2:09-cv-03195-KJM-CMK

   vs.

CITY OF REDDING, et al.,

        Defendants.      <u>ORDER</u>

_____/

        This matter is before the court on the motion of plaintiff Kent Bourland for a new trial under Federal Rule of Civil Procedure 59(a). For the reasons set forth below, plaintiff's motion is denied.

I.     BACKGROUND

        Plaintiff's claims arise from injuries he suffered when he was arrested by City of Redding police officers Brian Berg and Kevin Kimple at plaintiff's home on November 19, 2008. (ECF 1.) On November 16, 2009, plaintiff filed a complaint alleging eight causes of action against Berg, Kimple, Officer Allan Mellon and the City of Redding, including claims of negligence and violation of plaintiff's constitutional rights under 42 U.S.C. § 1983. (*Id.*) Prior to and during trial, plaintiff voluntarily dismissed all claims except for a negligence claim against Kimple and a Fourth Amendment excessive force claim against Berg under Section

1983. (ECF 28 at 5-6.) The case went to trial on January 14, 2013. (ECF 71.) On January 24, 2013, the jury returned a verdict in favor of defendants on both claims. (ECF 88.)

> Before trial, the parties agreed to the following undisputed facts:
>
> Defendants Kimple and Berg are police officers for the City of Redding, acting under color of state law. During the evening of November 19 and early morning of November 20, 2008, Redding police were called to [plaintiff]'s home regarding a domestic violence incident. [Plaintiff] hid in the brush behind his house. Police used a police dog, Cannon, to locate him. Cannon bit [plaintiff]. Redding Police arrested [plaintiff] for willful infliction of a corporal injury to his spouse resulting in a traumatic condition, a felony under California Penal Code § 273.5. [Plaintiff] was then taken into custody, handcuffed and transported to a local hospital for treatment. There was probable cause for the arrest.
>
> [Plaintiff] sustained dog bite injuries to his right leg, left upper arm and left armpit area. As a result of the dog bites, he suffered a loss of muscle function and permanent disfigurement to his left arm. As a result of the handcuffing, [plaintiff] suffered nerve injuries, specifically a compression injury to his ulnar nerve on his right and dominant hand. [Plaintiff] also had pain and suffering as a result of these injuries, as well as a period of partial disability. [Plaintiff] was treated and released from Shasta Regional Medical Center on November 20, 2008. He was not admitted to the hospital and his subsequent treatment was on an out-patient basis. His medical expenses were $13,580.90. Plaintiff does not claim future medical expenses. [Plaintiff] filed a timely government claim with the City of Redding, a condition precedent to his negligence claim.

(ECF 28 at 2).

Berg was called as a witness during plaintiff's case-in-chief. (Tr., ECFs 95, 96.)[1] He testified he was initially called to plaintiff's home to conduct a search for plaintiff and take him into custody. (ECF 95 at 8:1-6.) During the search, after not finding plaintiff inside, Berg and Cannon entered the back yard, and then Berg put Cannon over the fence separating plaintiff's yard from a greenbelt while Berg remained in the yard. (*Id.* at 13:25-14:4, ECF 96 at 6:8-9.) After a few seconds, Berg followed Cannon over the fence, then "maneuver[ed]" and saw plaintiff lying down and illuminated by multiple flashlights, including Berg's own flashlight. (ECF 95 at 15:17-19, 17:15-18, 20:5-22.) At that point, Cannon was three to five feet from plaintiff. (*Id.* at 20:25-21:1.) The officers conducting the search, including Berg, ordered plaintiff to raise his hands. (ECF 96 at 9:4-7, 10:16-17.) Berg testified that plaintiff

---

[1] Because plaintiff has requested only a partial transcript from the trial, the court references only the portion of the trial for which a transcript is available.

did not respond to the command, but that Berg was nonetheless able to see plaintiff's hands. (*Id.* at 18:2-12.) It appeared that plaintiff raised his hands in response to Cannon. (*Id.* at 18:17-22.)

Berg testified that Cannon was trained to respond to a "call-off signal." (ECF 95 at 6:1-2.) When the call-off signal is made, the dog will stop moving forward. (*Id.* at 5:16-20.) Cannon was also trained to stop biting on verbal command. (*Id.* at 6:10-14.) Berg never commanded Cannon to stop moving forward or stop biting before Cannon actually bit plaintiff. (*Id.* at 6:15-20.) Berg estimated that Cannon bit plaintiff for between ten and fifteen seconds before Berg reached plaintiff and physically removed the dog. (*Id.* at 11:1-6.) Berg was unable to offer an estimate of the time between his sighting of plaintiff and Cannon's biting plaintiff, but stated it was "very quick." (ECF 96 at 19:15-22:19.) When Berg first saw plaintiff, he appeared "startled" or "panicked" and did not appear to have a gun. (ECF 95 at 22:1-14.) Berg was aware that plaintiff had access to a shotgun that was kept somewhere in the house. (ECF 96 at 25:13-17.) Berg believed that, having not found plaintiff in his house, the risk to the officers of conducting the outdoor search was higher. (*Id.* at 28:1-8.) Although plaintiff's shotgun had been located by the time Berg saw plaintiff out back, Berg did not know this and was unable to determine what was within plaintiff's reach because "it was a rough area." (*Id.* at 30:12-13, 31:19-25.)

On February 20, 2013, plaintiff moved for a new trial, arguing that the clear weight of the evidence favored his case and defendants engaged in prejudicial misconduct. (ECF 91.) Defendants opposed the motion on March 6, 2013 (ECF 92), and plaintiff filed his reply April 15, 2013 (ECF 93).

II.     STANDARD GOVERNING MOTION FOR NEW TRIAL

Under Federal Rule of Civil Procedure 59(a)(1), the court may grant a new trial "on all or some of the issues . . . (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Because "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," district courts must look to "grounds that have been historically recognized." *Zhang v. Am. Gem Seafoods, Inc.*,

3

339 F.3d 1020, 1035 (9th Cir. 2003). These grounds include a verdict that is contrary to the weight of the evidence or is based on false or perjurious evidence; an excessive award of damages; or unfairness to the moving party. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). A court may order a new trial if an erroneous evidentiary ruling substantially prejudiced a party or if its instructions were erroneous or inadequate. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008); *Jazzabi v. Allstate Ins. Co.*, 278 F.3d 979, 985 n.24 (9th Cir. 2002).

When considering a motion for a new trial based on the clear weight of the evidence, "[a] jury verdict should be set aside only when the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218 (9th Cir. 2010) (internal quotations omitted). "[I]f the jury's verdict is not clearly against the weight of the evidence, the trial court abuses its discretion in ordering a new trial." *Kode v. Carlson*, 596 F.3d 608, 613 (9th Cir. 2010) (citing *Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1174 (9th Cir. 1990)). However, "[t]he judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Landes Constr. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987). The burden of proving the need for a new trial lies with the party bringing the motion. *Conwright v. City of Oakland*, No. C09-2572 TEH, 2012 WL 1945494, at *6 (N.D. Cal. May 30, 2012); *Anglo-American Gen. Agents v. Jackson National Life Ins. Co.*, 83 F.R.D. 41, 43 (N.D. Cal. 1979); *see also* 5B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2803 (3d ed. 2005).

III. ANALYSIS

    A. Excessive Force

A claim of excessive force in violation of the Fourth Amendment is analyzed under an objective reasonableness standard. *Scott v. Harris*, 550 U.S. 372, 381 (2007). "The 'reasonableness' inquiry in an excessive force case measures whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to the officer's underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 396–97

(1989).  To determine if a Fourth Amendment violation has occurred, the extent of the intrusion on the individual's Fourth Amendment rights must be balanced against the government's interests to determine whether the officer's conduct was objectively reasonable based on the totality of the circumstances.  *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003).  The analysis involves three steps:  First, the severity of the intrusion on the individual's Fourth Amendment rights is assessed by evaluating the type and amount of force inflicted.  *Id.* at 964.  Second, the government's interests are evaluated by assessing (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officer's or public's safety; and (3) whether the suspect was resisting arrest or attempting to escape.  *Id.*  Third, the gravity of the intrusion on the individual is balanced against the government's need for that intrusion.  *Id.*  Ultimately, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Graham*, 490 U.S. at 396–97.

        Plaintiff argues that the jury's verdict in favor of Berg on the excessive force claim was against the clear weight of the evidence (ECF 91 at 7.)  The excerpts of the trial transcript provided by plaintiff demonstrate there was sufficient evidence for the jury to find in favor of Berg on this claim.

        Regarding the first step of the required analysis, plaintiff contends that a police dog is a "significant" use of force that may cause permanent injury or death.  (ECF 91 at 9.)  Defendants assert that a police dog is an intermediate level of force.  (ECF 92 at 10.)  In contrast to other means of police force, the Ninth Circuit has not determined the level of force a police dog presents as a matter of law.  In *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994), a police dog gripped a suspect's body and dragged him, causing severe injuries to the suspect's left arm.  In concluding that the court should not have granted summary judgment in favor of the officers, the majority stated the force was "severe," *id.*, but a concurrence opined that the level of force was a question of fact dependent on the individual dog, *id*. at 1455-56.  In *Smith v. City of Hemet*, the court concluded that the force used by officers during an arrest, which

5

included a police dog inflicting puncture wounds, was a level greater than intermediate force. 394 F.3d 689, 701-02 (9th Cir. 2005); c*f. Bryan v. MacPherson*, 630 F.3d 805, 810 (9th Cir. 2010) (holding that use of tasers in dart-mode is an intermediate, significant level of force). Here, the parties agreed before trial that plaintiff suffered permanent injuries, which would support a finding by the jury that the use of Cannon constituted intermediate, and most likely severe, force.

Regarding the government's interests, plaintiff disputes that he posed an immediate threat to Berg and other responding officers. Plaintiff argues that he presented no threat because he was illuminated, seated, and had raised his hands in response to the officers' commands. (ECF 91 at 8.) Defendant responds that Berg's testimony showed that Berg knew plaintiff owned a gun and was unaware the gun had been found before Berg discovered plaintiff in an area beyond his backyard. Additionally, Berg lacked a clear view of plaintiff and his surroundings, so he could not be certain a weapon was not nearby. (ECF 92 at 8.) In terms of whether plaintiff was trying to escape, plaintiff argues the evidence shows he was not evading or resisting arrest because he was seated or lying down, and was not attempting to flee during the encounter. (ECF 91 at 8.) But the fact that plaintiff was hiding in the brush behind his home is consistent with Berg's reasonable belief that plaintiff was evading officers. (ECF 92 at 9.) Last, the parties stipulated that the underlying offense, domestic violence, was a felony, and this stipulation was communicated to the jury. (ECF 28 at 2.) In sum, the portion of the record provided by plaintiff contains ample evidence to support the jury's finding that Berg reasonably believed there was a threat to officer safety at the time Berg used Cannon to search for plaintiff.

In balancing the interests of the officers against those of plaintiff, the jury could have reasonably determined that the threat to officers' safety justified the use of force against plaintiff. Plaintiff argues Berg should have decided not to use a police dog after discovering plaintiff was not "barricaded" inside his house, did not have a gun, and was on the ground outside in a "passive position." (ECF 91 at 9.) Defendants respond Berg did not have this information until after Cannon had tackled plaintiff. (ECF 92 at 9-10.) In light of the

6

1  testimony at trial, the jury could have reasonably concluded that Berg was unable to stop
2  Cannon from biting plaintiff before Berg reached plaintiff and determined that plaintiff did not
3  pose a threat.
4  　　　　Finally, plaintiff urges that the police could have given additional verbal
5  instructions or ordered the dog to stand by while they approached plaintiff.  (ECF 91 at 9.)  But
6  Berg's testimony, that only a very short amount of time elapsed between his sighting of
7  plaintiff and the dog reaching him, provided the jury with a version of the facts that reasonably
8  supports the verdict.
9  　　　　The trial record on which plaintiff relies does not demonstrate that the defense
10 verdict on the excessive force claim was against the clear weight of the evidence.  The court
11 denies plaintiff's request for a new trial on this claim.
12 　　B.　　Negligence
13 　　　　The elements of negligence are "duty, breach of duty, causation, and damages."
14 *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989).  "Under
15 comparative fault, 'liability for damage will be borne by those whose negligence caused it in
16 direct proportion to their respective fault.'"  *Aidan Ming-Ho Leung v. Verdugo Hills Hosp.*,
17 55 Cal. 4th 291, 303 (2012).
18 　　　　While plaintiff asserts that the jury's verdict in favor of defendants on plaintiff's
19 negligence claim was against the clear weight of the evidence, he neither provides nor cites to
20 any part of the trial record relevant to the negligence claim.  He cannot meet his burden to show
21 a new trial is warranted.  This request too is denied.
22 　　C.　　Prejudicial Misconduct
23 　　　　Plaintiff argues that defendants' counsel engaged in misconduct that led to the
24 jury's improperly reaching a verdict based on a "moral judgment" rather than through a
25 deliberate consideration of the law and the facts.  (ECF 91 at 10.)  "Generally, misconduct by
26 trial counsel results in a new trial if 'the flavor of misconduct sufficiently permeate[s] an entire
27 proceeding to provide conviction that the jury was influenced by passion and prejudice in
28 reaching its verdict.'"  *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1192 (9th Cir. 2002)

(citing *Kehr v. Smith Barney*, 736 F.2d 1283, 1286 (9th Cir. 1994)).  "[T]he moving party must demonstrate adverse counsel's misconduct . . . 'substantially interfered' with the moving party's interest."  *S.E.C. v. Jasper*, 678 F.3d 1116, 1129 (9th Cir. 2012) (citing *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1405 (9th Cir. 1995)).

Plaintiff points to statements made by defendants' counsel during his closing argument suggesting that the cause of plaintiff's injury was his crime of domestic violence against his wife.  (ECF 91 at 10-11.)  During closing, defendants' counsel stated: "[Plaintiff] asked to hold the police responsible for their conduct, but [plaintiff] is responsible for the consequences of his conduct.  Why did this occur? Why did this incident occur? Because [plaintiff] assaulted his wife."  Plaintiff made an objection to this statement, which was sustained.  (ECF 98 at 13:3-10.)  Defendant's counsel also argued throughout his closing that plaintiff's injuries could be attributed to his own decision to hide from the police instead of submitting to arrest.  (*Id.* at 14:10-13, 14:22-15:2, 18:12-14, 19:19-21.)  Later, defendant's counsel said:

> "[U]nder state law, to the extent that. . . plaintiff . . . is himself negligent, causing these circumstances, then you're asked as one of these verdict forms—one of the verdict form questions, number seven there, whether [plaintiff] was negligent in his own actions that night. And number eight, whether his negligence was a cause of his handcuff injury.  Obviously, I think by now, our point is he certainly was unreasonable, which is the definition of negligent, in his actions that night in creating probable cause to arrest for a felony, and then remaining hidden, and refusing to respond to police for an hour and a half, result in the police having to take him into custody, and then handcuff him and take him to the hospital. If he hadn't been hiding out, he wouldn't have been involved with the dog.  He wouldn't have been at the hospital.

(*Id.* at 27:24-28:14.)  Plaintiff objected to this last portion as an "improper argument for contributory negligence," but the court overruled the objection.  (*Id.* at 28:15-19.)

Plaintiff has not demonstrated that any improper statements by defense counsel statements impacted the proceeding sufficiently to warrant a new trial.  To the extent plaintiff challenges defendant's argument during closing, that the force used by police was due in part to

8

plaintiff's decision to attempt to avoid arrest, the court disagrees.  The defense argument, on balance, was relevant to the factors that the jury needed to consider for the excessive force inquiry.  Additionally, defense counsel's two improper statements that plaintiff's injuries were a result of the assault on his wife were infrequent; plaintiff's objection to the first utterance was sustained while the court overruled the second objection.  The second utterance of the objectionable phrase was embedded in a litany of other statements that counsel linked to the jury instructions read to the jury after both closing statements concluded.  The jury also was instructed that "[a]rguments and statements by the attorney are not evidence . . . . [w]hat the attorneys have said . . . in their closing arguments . . . is not evidence."  (Final Jury Instructions, ECF 83 at 6.)  Even if the court's overruling of plaintiff's last objection were error, counsel's argument did not permeate the trial so as to cast doubt on the jury's verdict.  *See S.E.C.*, 678 F.3d at 1129 ("[S]mall number of isolated statements in lengthy closing and rebuttal arguments" did not warrant new trial).  Moreover, as defendant argues, any improper statements about contributory negligence were mitigated by the fact that the jury never reached the question of contributory negligence because it did not find Kimple to be negligent in the first place.  (ECF 92 at 15.)

The court denies plaintiff's request for a new trial on this ground as well.

IV.    CONCLUSION

For the reasons stated above, plaintiff's motion for a new trial is DENIED.

IT IS SO ORDERED.

DATED: August 28, 2013.

_____
UNITED STATES DISTRICT JUDGE

9